1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6    UNITED STATES OF AMERICA,              Case No.  3:20-cr-00190-JD-1

7              Plaintiff,                              3:21-cr-00187-JD-1

8         v.
                                           **ORDER RE REMAND**
9    GEOFFREY MARK PALERMO,

10             Defendant.

11         After the government adduced substantial evidence that defendant Geoffrey Palermo has

12   engaged in several fraudulent schemes to obtain money under false names and pretenses from

13   innocent victims, the Court revoked his pretrial release in favor of detention pending trial.  Dkt.

14   No. 208.  Custody was ordered after a hearing pursuant to 18 U.S.C. § 3148(b) and on the basis of

15   the Court's conclusion that there was probable cause to believe that Palermo had committed a

16   federal or state crime while on pretrial release, and that there was clear and convincing evidence

17   that Palermo had violated his conditions of release.  *See id.*[1]  The record demonstrated that there

18   were no conditions of release that would assure that Palermo would not pose a danger to the safety

19   of any other person or the community.  *See* 18 U.S.C. §§ 3148(b), 3142(g).

20         Palermo now asks the Court to "revisit" pretrial detention on the basis of "supplemental

21   information regarding his medical condition, his wife's medical condition, and factual rebuttals to

22   the claims alleged by the government."  Dkt. No. 213 at 1.  The government filed an opposition.

23   Dkt. No. 217.  Palermo's motion is suitable for decision without oral argument pursuant to Civil

24   Local Rule 7-1(b).  Dkt. No. 220.  Reconsideration is denied and Palermo will remain in custody.

25         The reasons for this conclusion are straightforward.  To start, Palermo's request -- which is

26   styled as a motion for reconsideration and does not articulate any other statutory or rule provision

27

28   _____

     [1] Citations are to the docket in Case No. 20-cr-190.

United States District Court
Northern District of California

1   under which it is brought -- does not meet any of the conditions that might open the door to further

2   review of the detention order.  "Under our Civil Local Rules, applicable here through Criminal

3   Local Rule 2-1, reconsideration of an order is possible if:  (1) 'a material difference in fact or law

4   exists from that which was presented to the Court' before entry of the order, which in the exercise

5   of reasonable diligence was not known by the party seeking reconsideration; or (2) new material

6   facts have emerged or a change of law has occurred; or (3) there was a 'manifest failure by the

7   Court to consider material facts or dispositive legal arguments' that had been presented before the

8   order."  *United States v. Florida*, No. 14-cr-00582-JD, 2017 WL 1374599, at *1 (N.D. Cal. Apr.

9   17, 2017) (quoting Civil L.R. 7-9(b)).[2]  Palermo has not attempted to explain how any of these

10  conditions are satisfied, or said why the ostensible grounds for reconsideration could not have

11  been presented earlier.  *See generally* Dkt. No. 213.

12          The information Palermo presses is not "new" in any material way.  As the government

13  states, Palermo does little more than nip at the margins of his schemes, and did not provide any

14  evidence that might call into question the government's showing of misconduct while on release.

15  The government's core facts in support of remand and detention, which are well supported in the

16  record, *see* Dkt. Nos. 199-1, 217-1, have not been meaningfully challenged by Palermo.

17          Two examples put a finer point on Palermo's evidentiary shortfall.  In the initial remand

18  proceeding, the government provided evidence that "Palermo made false representations to a

19  lender to obtain a $200,000 loan."  Dkt. No. 202 at 11; *see also* Dkt. No. 199-1 ¶ 29.  The

20  government established that "Palermo did not tell the lender that he planned to use the money to

21  pay his criminal defense attorney," and that days after the money was wired into Palermo's wife's

22  bank account, "Palermo wired $180,000" to his criminal defense firm.  *Id.* at 11-12.  Palermo now

23  says that the lender, an individual known here as MH, "was in fact aware of the nature of the loan

24

25  _____

    [2] A detention hearing "may be reopened, before or after a determination by the judicial officer, at
26  any time before trial if the judicial officer finds that information exists that was not known to the
    movant at the time of the hearing and that has a material bearing on the issue whether there are
27  conditions of release that will reasonably assure the appearance of such person as required and the
    safety of any other person and the community."  18 U.S.C. § 3142(f).  To the extent that Palermo's
28  request for reconsideration can be construed as a motion to reopen the detention hearing, it is
    denied for the reasons stated herein.

United States District Court
Northern District of California

1    when he made" it.  Dkt. No. 213 at 4.  But an interview of MH conducted by FBI Special Agent

2    Alexandra Bryant demonstrates otherwise:

3        In late 2022 Palermo asked [lender MH] for a $200,000 loan . . . .  Palermo
         said he had three business deals that were about to close that would help him pay
4        back all the money he owed Pacific Private Money.  Palermo just needed $200,000
         to finish the business deals.  The three business deals were related to the sale of
5        farm equipment, an expensive watch, and some sort of property referred to as
6        "Ashland".

7        [MH] did not know Palermo used the $200,000 to pay his criminal attorney.
         Palermo might have mentioned needing to pay an attorney in relationship to the
8        farm equipment.  [MH] thought he might have been fooled and was probably told
         nonsense by Palermo.  A lot of customers in the hard money loan business talked
9        nonsense.  Palermo eventually told [MH] that the business deals were not going to
10       work out.

11   Dkt. No. 217-1 at ECF p. 6.  Palermo mentions a vague statement by MH to the effect that he had

12   heard something about legal fees, *see* Dkt. No. 213-1 at 1, but the statement is consistent with the

13   FBI's interview notes.[3]

14       In a similar vein, the government proffered evidence that Palermo had been arrested in

15   June 2023 by the Novato Police Department for possession of a stolen vehicle and obtaining

16   money by false pretenses.  *See* Dkt. No. 202 at 12.  The police report states that Palermo was

17   arrested after taking a "vehicle to conduct repairs, accepting $34,000 for the repairs and then never

18   returning the vehicle to the owners nor completing the work, attempting to sell the vehicle for an

19   additional $4,500 and claiming legal ownership while the vehicle had been reported stolen by the

20   owners."  Dkt. No. 199-1 at ECF p. 20.  Palermo does not dispute any of this, but merely seeks to

21   pin blame on the vehicle's owners for not "inquir[ing] about the status of the repairs on the . . .

22   car" and law enforcement for not seeking "clarity . . . regarding whether the [vehicle] had been

23   legally abandoned."  Dkt. No. 213 at 7.  The effort to find an excuse in this manner does not call

24   into question the fact that Palermo was engaging in yet another fraudulent scheme while on

25   

26   ─────────────────────
     [3] Palermo filed a belated supplemental declaration in which MH states that he "would have loaned
     Mr. Palermo the money regardless of what kind of legal work the funds were to be used for."  Dkt.
27   No. 221-1 at 2.  This vague statement also does not directly refute the government's allegations or
     contradict the FBI's interview notes.  Palermo has had at least three opportunities to address these
     allegations, *see* Dkt. No. 206 at 8; Dkt. No. 213 at 3-4; Dkt. No. 221 at 1, and each time he has
28   fallen well short of meaningfully disputing them.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   release.  As Palermo acknowledges, the "case is currently pending in Marin and investigation is

2   ongoing."  Dkt. No. 221 at 4.

3          Palermo's closing grounds for reconsideration concern health issues.  To the extent

4   Palermo has health issues, the undisputed record indicates that he is receiving treatment in

5   custody.  *See* Dkt. No. 213 at 8; Dkt. No. 217 at 7.  Nothing in the record suggests he is in such

6   dire health circumstances as to warrant release, particularly in light of the threat and danger he

7   poses to the community.  For his wife, although the Court is sympathetic, her condition is not new

8   and has been mentioned before on occasion by Palermo in prior proceedings.  For present

9   purposes, the salient fact is that Palermo abused his pretrial release status to engage in fraudulent

10  schemes while fully knowing about his wife's circumstances.  He is ill-situated to ask to be

11  excused from custody on the basis of his wife's pre-existing condition.

12         Palermo's suggestion of additional conditions of pretrial release is not well taken.  Pretrial

13  services has already stated that they do not have the technology and resources to enforce the

14  extensive, full-scale monitoring that would be necessary to protect the community.  Palermo has

15  not provided any evidence or argument to suggest otherwise.

16         **IT IS SO ORDERED.**

17  Dated:  September 1, 2023

18

19  _____

20  JAMES DONATO
    United States District Judge

21

22

23

24

25

26

27

28

4